The next case this morning is 524-09-57, Midwest Neurosurgeons, LLC v. F.W. Electric, Inc. Arguing for the appellant is Adrienne Medered, arguing for the athlete is Courtney Cox. As this case involves a cross-appeal, each will have 15 minutes for their argument. The appellant slash cross-athlete will then have five minutes for rebuttal, and the cross-appellant will have the last five minutes for cross-appellant rebuttal. Please note, only the clerk of the Morning, Counsel. Appellant, if you are ready to proceed, you may do so. Good morning, and thank you, Your Honors, and may it please the Court. First of all, can everybody hear me properly? Yes. Perfect, thank you. Your Honors, in this case, my client, Midwest Neurosurgeons, LLC, filed a third-party beneficiary breach of contract claim against F.W. Electric, an employer who promised to pay for its employees' medical expenses. Now, F.W. Electric's position is that the ABLE case requires a medical provider to be specifically named in the settlement contract to have a valid third-party beneficiary of breach of contract claim. Is that what it says? Is that what ABLE says, or does it also say that it can be a class of providers? Your Honor, ABLE discusses the two avenues in which a third-party can assert a name in the settlement contract or if the contract issue describes a class to which the third-party belongs. And does your client suggest that they are part of that third-party class? In this case, yes, Your Honor. So is that ABLE? I'm trying to find out what the difference between your claim here and your claim in ABLE was. Your Honor, in ABLE, as this Court is aware, the language, quote, directly to the providers was merely restating a provision of the Illinois Workers' Compensation Act, which is one of the reasons why this Court found that third-party status wasn't created. And that conclusion, per this Court, was supported by the fact that the settlement contract in ABLE included or mentioned another medical provider of the neurology of Southern Illinois, which is another reason why this Court found that no third-party status was created. In this case, none of those issues are in the settlement contract. The contract here includes a promise by the employer to pay the reasonable, necessary, and causally related medical expenses. That's it. There's no other mention of another medical provider, just their promise to pay for medical expenses. And that is why appellant belongs to that class to which the settlement contract here describes. Doesn't that make it clear that your client is an incidental beneficiary rather than a, I mean, it seems like ABLE is even more controlling in this case because your client's not specifically listed. It doesn't say anything about how FWA Electric should pay those expenses to the employee directly to the provider. It doesn't say anything about that. Your Honor, the promise for the employer to pay all of the reasonable, necessary, and causally related medical expenses is a direct promise to pay for those expenses, which would, not instantly, it's a direct benefit to the medical providers that provided those services to the employee here, Mr. Michael Sullivan. The difference here, again, is that there is no direct link to the provider's language. So, issue that this court found in ABLE in that direct link to the providers merely restates the provision of the act, that since that issue is not present here, it can't be more specific than a promise to pay for all those medical expenses, which creates a class to which Midwest Neurosurgeons LLC belongs. Who is the promise made to in the settlement agreement in regard to paying for all medical expenses? Is it making the promise to all providers, or is it making a promise to the employee that all of those will be paid? The promise is made, but the contract is between the employee and the employer. So, employer, the FWA Electric is promising Mr. Sullivan that all of his bills will be provided for. But as part of that, that creates the class to which, again, Midwest belongs to, to have all of its reasonable, necessary, and causally related medical expenses paid for. So, FWA Electric's position misinterprets ABLE and contravenes the Illinois Supreme Court's holding in the Altevogt case decided in 1981 that allows for third-party beneficiary breach of contract claims, and that third-party status can be created by, again, being expressly named in the contract or if the contract defines a third party by description of the class. Again, we are part of a class here. The contract language here states that FWA Electric promised and agreed to pay for the reasonable, necessary, and causally related medical expenses, which arose from the date of the alleged accident, October 13, 2010, and were incurred between October 13, 2010, and the date of the approval of the settlement. Now, my client plied all of the elements of a third-party claim, and there really isn't a dispute as to whether Midwest failed to plead those facts. Now, FWA Electric argues that dismissal was proper because my client was not specifically named in the contract. That position, again, ignores that my client is part of a class to which the contract describes. In support of its position, FWA Electric relies on a line of insurance cases, including the Farnsworth case and the Martis case, which are all inapplicable because those cases analyzed insurance policies as opposed to settlement contracts. Now, as this court is aware, insurance policies, when interpreted for third-party status, they do have an exception to the standard rule, and that exception requires the third party to be specifically named in that insurance policy. Now, nowhere in Martis and nowhere in Farnsworth did either court hold that the medical providers must be specifically named in settlement contracts to assert third-party claims. FWA Electric simply has no case law extending such an exception to settlement contracts. Now, your honors, I quickly want to address some comments made by FWA Electric on page six of their brief that this case could have been avoided if my client made certain that it was specifically named in the settlement contract. We weren't part of the negotiations of the contract, nor are we parties to the contract. That's the whole point of Midwest action here. So the idea that this whole scenario could have been, quote, easily avoided by being named in the contract, that position just doesn't make any sense. Now, FWA Electric also relies on an unsupported and overly broad interpretation of ABLE that we discussed earlier, your honors, which contravenes Illinois Supreme Court precedent as it limits avenues to which third parties can assert contract claims. Again, ABLE is distinguishable. There, the settlement contract between the employer and the patient included a promise for the employer to pay directly to the providers the causally related medical expenses incurred up to September 26, 2012. Respondent also agreed to pay directly to the provider the unpaid medical expenses incurred prior to the date of the settlement at Neurology of Southern Illinois. Now, this court in ABLE found that that contract did not create third-party status because the directly to the provider's language, quote, merely restates the provision of the Illinois Worker's Compensation Act. Let me ask you a question. How did that name specific provider, what's your speculation, if you will, on how it got named specifically in that settlement contract? Your honor, I'm not exactly sure, and the reason why we don't know is we weren't even allowed to proceed in discovery in that case. Had we been able to get past the motion to dismiss stage, we could have perhaps issued some discovery requests as to why Neurology was specifically named and why other providers such as Midwest Heart Surgeons weren't specifically named. So, I'm not exactly sure why Neurology was specifically named. I couldn't tell you that, your honor. Okay, and that's why I asked you to speculate. I wasn't sure if you would know or not, but that's fine. I'm not sure, your honor. I'm sorry about that. No worries, no worries. Um, again, so the fact that the director of the provider's language and the fact that another provider was specifically named in the contract were the reasons why this court found that no third-party status was created in ABLE, at least on behalf of Midwest Heart Surgeons LLC. Those issues aren't present here, so ABLE is simply distinguishable. And I do want to quickly address the trial court's denial of FW Electric's sanctions request. ABLE is unreported and, as this court is aware, under Rule 23E1, can only be cited for persuasive purposes. Sanctions are inappropriate because none of the parts of Rule 137, therefore, apply here, and this court should uphold the trial court's discretion in denying FW Electric's sanction request. Finally, on a policy note, I need to bring up the consequences of adopting FW Electric's The question is, how many employees are in Illinois that reduced their, in exchange for reducing their claims and or releasing their claims completely, did they exchange that in exchange for a promise on behalf of the employer to pay for all the medical bills, where the employer would later suggest that the providers should actually sue the employee first in order to obtain relief on those medical bills. There's thousands and thousands of those contracts, and to suggest that the employee must be sued first by the provider just contravenes the Illinois Workers' Compensation Act's purpose, which is to provide prompt and equitable compensation for an employee's injuries. And to wrap this all up, Your Honors, so FW Electric is simply just trying to limit who can bring a third-party claim, and other than relying on a line of insurance cases and misapplying ABLE, there is no support for FW Electric's position, and the position actually goes against long-standing Illinois precedent that allows for third-party status to be created by, again, being expressly named in the contracted issue, or if the contract describes the class to which the third party belongs. For that reason, this court should reverse the trial court's order granting FW Electric's motion to dismiss, and should deny reversal of their sanctions request. Thank you, Your Honors. And if there's any more questions, I'm finished. Any further questions, Justice Barberis? Not at this point. Justice Vaughn? Just to be clear on the standard of review, it's de novo on the first part and abuse of discretion on the sanctions? I believe so, Your Honor, yes. All right, thank you. Thank you. All right, you'll be given time for rebuttal. Applee, you may proceed. Thank you, Your Honor. May it please the court. Good morning. When I first became involved in this case, I didn't know much about this area of the law, so I began my research. And when I found the Abel case, I was very surprised that this plaintiff brought another claim that is, as the trial court found, indistinguishable from Abel. The same rule applies here, and I was surprised to learn that they had filed another complaint after this court told them it was not appropriate. And then I learned that they even filed another complaint in the DCI case, which this court recently decided as well, in favor of the employer. So I began looking at Abel and asked myself, is it different? And what I found was, yeah, it's a little different in that it's even more substance-oriented in terms of of not being a third-party beneficiary than Abel was. For example, Midwest points to this idea that there is language in the Abel contract that says to pay directly to the provider. That's not in our case. We don't have that language. And they say, well, that makes it different. Actually, the absence of the direct payment language in this case makes it even less suggestive that Midwest was a third-party beneficiary. And the fact that there was another specific provider named in the Abel contract makes it even more clear that this party was not intended to be a beneficiary. Do you think the fact that there are some differences gives credence to the idea of maybe affirming the trial court on the sanctions issue that there was enough distinction that they were not in violation for bringing this claim, or do you think it's so clear-cut that sanctions should have been imposed? I think that it was so clear-cut that sanctions should be imposed, Judge, and here's the reason for that. The contract here is even more clear that they were not intended to be a third-party beneficiary than in Abel. So it's even more clear here than it was in that case because you had the direct language. And there the court said, despite the inclusion of the direct payment language, we don't even have that here. So it's even more clear in this case that it was Midwest was not intended to be a beneficiary. Do you agree, though, that the standard on concerning the sanctions is abuse of discretion? It is, Judge. Thank you. Yeah, I agree. So in this case, one of the things that they argued and they didn't argue today is that Abel is a Rule 23 order, and they really didn't have to follow it. But when you go back to the Martis case, which was in 2009, it was a little different than the facts, but the basic premise of it was the same, that the contract did not mention the chiropractor by name and not by class. And let me address the class issue. There is no class defined of any kind in our contract. So in order to become an intended beneficiary in this case, they had to be specifically named. They clearly were not, and they knew they were not. They knew when they filed this complaint that they did not fit either category of being specifically named or being a part of a class since there are no classes here. So this was well-established law even before Abel. And in this case, it's clear that they were not an intended beneficiary. It's very clear from the Hernandez case in the Supreme Court in 2020, that a provider can collect from an employee, but cannot look to the employer as a source of payment from a settlement agreement. And so in this case, there's well-standing law before we get to Abel. And so the fact that they claim they were not bound by Abel because it's a Rule 23 order, is it appropriate? There are other cases that have been analyzed and well-analyzed in Abel that make it clear that you can't do what Midwest continues to try to do. And I think it's important to note, this case that you're hearing today does not stand alone. Midwest has been filing these cases even after Abel, trying to get a different result and hoping the court will change its mind, perhaps. But these cases are not grounded in the law. They're contrary to the law as set forth in Abel, as set forth in Martis, as set forth in Hernandez and all the other cases that were very well-analyzed in the Abel case. So the trial court was correct on the basic premise that they have to prove their third-party beneficiary by either being named or being a part of a class that's identified was not met here. Let me ask you a question. Your appellant's counsel brings up a good point. How are they supposed to be named in a settlement agreement that they're not a party to? How do they ensure that their claim as a claimant, that they're named in that settlement agreement? I'm just curious. That's a good question. In my former life, I used to do quite a little bit of work comp work, and I know that when you, in representing both sides of it, and I know that when you get to the point of settlement, you talk to the providers and you make sure that things are covered, and you make sure you have the right amounts. And at that point, a provider can say, I want to be included. And that's apparently what happened in Abel, because they were specifically identified. They knew the rule. They said, we want to be specifically identified in the settlement contract. I'm guessing to some extent, but based on my experience, I know that there is a dialogue that occurs between the claimant's attorney and the medical providers. It's the same in a personal injury case. You make sure you've got all the ducks in a row with respect to medical issues. So it's amazing to me that Midwest, having been through Abel, having realized the law that existed before Abel, didn't go through that process and engage these employees, attorneys in the process of making sure they're named. That's why I said that. That's based on my experience. That's what we did to make sure everything was appropriate. Right. So let me follow up with that. In terms of the class of providers that can assert a third party claim, in this case, you're suggesting there was no class established that the appellant was a party to or a party of or part of, I should say, that would provide them with that third class or third party status. Can you give an example of what you believe an established class of providers would look like in that settlement agreement? I would consider a class to be, for example, all orthopedic charges. If you provided orthopedic services or it could be physical therapy. In other words, it has to be a subset of whatever the medical, the entire universe of medical providers are that are being considered. In our case, it's just the universe. There is no subset, for example, hospital bills or medical bills. Why is there a need for that specificness in naming? Why doesn't it sound like all medical, all reasonable and necessary medical establishes, as you said, a universal class, but a class nonetheless? I don't think it's a class. I think if it's everything, it's not a class of a subset of providers. The same was true in ABLE. There was no class identified in ABLE either. Rather, the complete argument there was you weren't specifically named because there was no class identified. It's the same here as it was in ABLE. There's no subset or class of people that have been identified, the providers that have been identified. For that reason, your honors, I'm happy to answer any questions you have. I appreciate your questions and the chance to talk with you about this. The trial court was right. ABLE is controlling, just as it did in the DCI case, that was found by the trial court on the same basis to be dismissed. This should be affirmed, but I do want to finally address the sanctions issue very briefly. Let me stop you before you go there and just ask one other question. If Midwest obviously provided services to the employee and they're not able to ensure that they get paid through the settlement contract in the worker's comp claim because they are not specifically named and because arguably there's not a class that has what's a way of them being paid. I assume that that would be for them to simply sue the employee who the services were rendered to. Then the employee would have to go back after the employer for not honoring that settlement agreement in the worker's comp claim. Is that correct? That is correct. I think that's how it was reviewed in ABLE and also in Hernandez. The you cannot, provider, you cannot sue the employee or you have to sue the employee and the employee sues the employer. That would happen in this case. Appellant's attorney suggested there'd be a chilling effect on providers being willing to provide services to injured workers where they it's that there's a potential or pending worker's comp claim. Do you see it that way? I don't see it that way at all because there's been no demonstration that that's true. The other thing is the provider has a method by which to protect itself and that is to ensure that it's named in the settlement contract, which is what happened in that case. That provider took care of itself and got it. I'm curious because I asked you that and I don't know that we have a definitive reason or answer as to how they ensure that. I mean, simply speaking to the employee's attorneys and saying, hey, we're owed this money. Now, yes, it seems like that would generate enough concern for employee's attorney to list them, but it doesn't necessarily force them to, especially if there's any perhaps concern that the services are being overcharged or they're not, they weren't adequate in some way. I don't know that we can say that they can ensure they're named in the settlement contract. Well, I think there is a method, Judge, and I think the way to do that is you tell the claimant's attorney, the employee's attorney, if you don't name us in the settlement contract, we're going to sue your client. Right. That would get the job done for me, I'll tell you. Well, wouldn't it also be the same effect if a provider takes on a patient that is involved in any way with a workers' comp claim or a potential workers' comp claim that in the contract for services with that patient, they simply put a clause in there that says if you have a claim that is settled through the workers' comp that you agree, you hereby agree that you will name, list us as a provider on the settlement agreement? Yes, absolutely. I think that would be an excellent way to do it. And there are a number of ways, including that, and including the threat of a suit against the employee that you can take care of that. But the law recognizes that it may seem a little bit unfair, but this is the way the Supreme Court addressed it. This is the way the employee who they may then sue the employer. But I agree with you, Judge, there are ways for the provider to protect themselves, none of which were done here by Midwest and apparently continue not to be done. And that's the problem. I know that Justice McKinney may be looking at the clock and that you're down to zero. I know you wanted to at least touch on the sanctions. And I would ask Justice McKinney to allow you a minute or two to do so since I ate up all your time with that last question. Thank you for that. I think my opponent has five minutes rebuttal and then I have five minutes after that on the sanctions. Thank you, Judge. Okay. Any further questions, Justice Fon? No other questions. Thank you. Appellant, you may present your rebuttal argument. Thank you, Your Honor. So, my friend on the other side argues that the contractual language here is a distinction without a difference and the words mean the same thing, which the trial court appeared to agree with. Again, this argument is contrary to ABLE and actually poses a question then, what language would be sufficient to create third-party status? If the words directly to the providers can't be used and a promise to pay all the reasonable, necessary, and causally related medical expenses can't be used, then what can be? I think this court put it aptly, the language in the contract creates a universal class. And my opponent is arguing that it just wasn't specific enough by naming a subset of people that is more appropriately defining a class. That's not what the law is in Illinois. The law requires just a description of a class to which the third party belongs. It doesn't say anything about how you need to be so specific that it's a subset of a universal class. And I'll also mention that this court in the DCI biologicals case didn't decide on appeal, did not decide the case on grounds that such as what the ABLE court decided. This court decided DCI biologicals on statute of limitations grounds. So, DCI is of no use here. I will say also this court pointed out that the distinction between the language here, as well as the distinction with compared to the language in ABLE, is a good reason alone to find that sanctions are inapplicable. It couldn't be more clear that since the language is different, there's good reason why the court found that sanctions are inappropriate. As for the Martis case and the Hernandez case that my friend on the other side discussed, the Martis case again discussed third party status with regard to insurance policies as opposed to settlement contracts. Again, we don't have an insurance policy here, we have a settlement contract. In the Hernandez case, the Illinois Supreme Court discussed whether a medical provider can collect proceeds from a workers' compensation settlement contract in the bankruptcy context. That case didn't discuss third party status as to whether a medical provider can sue under a settlement contract as a third party beneficiary. And to go back on that universal class description, this settlement contract does include the expenses that Midwest neurosurgeons incurred. It includes, again, the promise is payment of reasonable, necessary, and causally related medical expenses. It can't get more specific than that. The suggestion that the contract should have said something like orthopedic costs or anything other specific just, again, contravenes well-settled Illinois law that allows for a description of a class. And going back to the alternative that FW Electric suggests that Midwest neurosurgeons or any provider for that matter should sue the employee, again, that contravenes the Illinois Workers' Compensation Act that provides for prompt and equitable compensation for an employee's injuries. The suggestion that a provider should sue the employee despite an employer's promise to pay for all of their medical expenses just simply doesn't make sense. And opening up an employee to liability, again, for a promise that the employer already had made to pay for their medical expenses, simply contravenes the Illinois Workers' Compensation Act. And lastly, again, we run into the issue, and I don't believe my opponent raised any poignant point on this, that what providers should do is ensure that it's named in the contract. Again, that's just not possible if they're not party, it's not easily done if the provider is not a party to the negotiations of the settlement contract. Again, I'm not sure how it happened in ABLE, but it's just not something that could be done with ease if, again, they're not part of the contract. And that's all I have, Your Honors. Unless there's any other questions, I am finished. Mr. Svahn, anything further? No other questions, thank you. And Justice Barberos. No, thank you. All right, Appley, I will give you a little more time on the sanctions since you were not able to address it, so go ahead, briefly. Thank you very much. And I won't belabor the point, I'll be brief. When you look at ABLE, ABLE says that in order to be a third-party beneficiary to a contract, the intention must be shown by an express provision identifying the third-party beneficiary by name or description of a class. Midwest, when it filed this complaint, and when it filed the ABLE complaint, and when it filed the complaint in DCI, knew that was the law. And the law has not changed, yet they keep filing these complaints, hoping for a different result. That is the very essence of what Rule 137 is designed to prevent, the continuation of doing something when you're told not to do it. It's not supported by existing law. They want to argue that, well, this isn't, we're part of a universal class. You know, if you take all these people that live in the United States and say they're a class, that's just not correct. There are classes of people within that universe. And so they have an opportunity here to protect themselves, but they keep not taking it. They keep just filing cases because they don't like the law. And that's what Rule 37 is about. So we would ask that the court reverse that portion of the court's order and remand it for a hearing on sanctions. Thank you. Thank you both, counsel, for your arguments. We will take this matter under advisement and issue a ruling in due course.